**SIGNED.**

Dated: April 26, 2007



_____
**RANDOLPH J. HAINES**
**U.S. Bankruptcy Judge**
_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re ) | Chapter 13 |
| ) | |
| PATRICIA ANN CHAMBERLAIN, ) | CASE NO. 2:06-bk-01774-RJH |
| ) | |
| ) | O P I N I O N |
| Debtor. ) | |
| _____) | |

The issue here is whether § 707(b)(2)(A)(ii)(I) of the Bankruptcy Code[1] permits a debtor to claim an ownership expense deduction for a vehicle that is owned free and clear of liens, for purposes of determining "the debtor's projected disposable income" for a Chapter 13 plan. We conclude that § 707(b)(2)(A)(ii)(I) allows such a deduction in the amount specified by the Internal Revenue Service ("IRS") Local Transportation Expense Standards.

### Factual Background

Patricia Ann Chamberlain ("Debtor") has filed a Chapter 13 plan. The Chapter 13 Trustee Edward Maney ("Trustee") has objected to the plan as not devoting all of the Debtor's "projected disposable income" to payments to unsecured creditors under the plan, as required by § 1325(b)(1)(A). Because her Current Monthly Income[2] puts her over the median income for an Arizona family, the "amounts reasonably necessary to be expended"[3] for her maintenance must be determined in accordance with § 707(b)(2)(A), generally known as the "means test."

---

[1] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23 (2005).

[2] Code § 101(10A).

[3] Code § 1325(b)(3).

Code § 707(b)(2)(A)(ii) provides that the debtor's "monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards,[4] and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides . . . ."

The Debtor owns a 2000 Chevrolet Cavalier, with 111,000 miles, free and clear of any liens. In determining her expenses, the Debtor listed on Line 28[5] of Form B22C a $200 Local Standards ownership expense for the vehicle. This was less than the applicable standard, because the IRS Local Ownership Cost for the West Census Region is $471 for the first car and $332 for the second car.[6]

The Trustee has objected to this expense claim because he maintains that such "ownership expenses" may be claimed only if the car secures a debt (or is leased). He relies on the Internal Revenue Service Collection Financial Standards, which state that the "ownership costs provide maximum allowances for the lease or purchase of up to two automobiles . . . . If a

---

[4] The IRS has established both the National and Local Standards which together make up the Collection Financial Standards which are utilized by the IRS when determining the ability for a taxpayer to pay a delinquent tax liability. In re Fowler, 349 B.R. 414, 416 (Bankr. Del. 2006). The National Standards, which are based on the gross income and family size of the taxpayer, include amounts for the expenses of 1) food, 2) housekeeping supplies, 3) apparel and services, 4) personal care products and services, and 5) miscellaneous. The Local Standards, which are based on the taxpayer's location and family size, set amounts for 1) housing and utilities, and 2) transportation costs. Descriptions are available on the IRS website, http://www.irs.gov/individuals/index.html.

[5] **Local Standards: transportation ownership/lease expense; Vehicle 1.** Check the number of vehicles for which you claim an ownership/lease expense. (You may not claim an ownership/lease expense for more than two vehicles.)

Space to check whether 0, 1, or 2 or more vehicles.

Enter, in line a below, the amount of the IRS Transportation Standards, Ownership Costs, First Car (available at www.usdoj.gov/ust/) or from the clerk of the bankruptcy court); enter in Line b the total of the Average monthly Payments for any debts secured by Vehicle 1, as stated in line 47; subtract Line b from Line a and enter the result in Line 28. **Do not enter an amount less than zero.**

[6] The Debtor apparently claimed $200 based on the Trustee's advice that he would not object to that amount because the Internal Revenue Manual allows $200 for a vehicle over six years old with more than 75,000 miles.

2

taxpayer has no car payment, . . . only the operating cost portion of the transportation standard is used to come up with the allowable transportation expense."[7]  In order for the Plan to be confirmed, the Trustee has requested the Debtor to increase her disposable monthly income by the $200 vehicle ownership expense deduction.  Debtor has responded to the Trustee's objection by requesting that this Court overrule the Trustee's objection and allow the $200 vehicle ownership expense deduction, or as a result of this ruling the full $471 Local Transportation Expense Standard.

**Analysis**

The issue here is the meaning of "expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards."  The National and Local Standards referred to in this statutory section are part of the collection financial standards used by the IRS to determine a taxpayer's ability to pay a delinquent tax, and a debtor must determine allowed expenses according to these standards.  They are published on line, and are readily accessible by links from the U.S. Trustee's website,[8] and probably from most bankruptcy courts' websites.

The Local Transportation Standards vary according to the region of the country where the debtor resides.  They have two components, one for operating expenses and one for ownership expenses.  The "Operating Costs and Public Transportation Costs" table provides numbers depending on whether the debtor owns no car, one car or two cars.  The "Ownership Costs" table provides numbers for the debtor's "first car" and "second car."

The Trustee argues the Debtor may not claim the "ownership cost" for a car owned free and clear, for a couple of reasons.  First, if there is no debt service or lease payment, the

---

[7] Internal Revenue Manual § 5.8.5.5.2 (09-01-2005), available at www.irs.gov/individuals/article/0,,id=96543,00.html.  The Trustee notes this is substantially identical to the guidelines in the Internal Revenue Manual, Financial Analysis Handbook, § 5.15.1.7(4)(2) (05-01-2004).

[8] The Local Transportation Expenses are available at: http://www.usdoj.gov/ust/eo/bapcpa/20061001/bci_data/IRS_Trans_Exp_Stds_WE.htm

Case 2:06-bk-01774-RJH    Doc 19    Filed 04/26/07    Entered 04/27/07 08:36:55    Desc
Main Document    Page 3 of 9

expenses incurred by virtue of owning the car are already covered by the "Operating Cost" amount. Second, The Trustee relies on a line of cases that have utilized the IRS' Internal Revenue Manual or the Internal Revenue Service Collection Financial Analysis Standards[9] (hereafter collectively the "Manual") to determine whether a debtor is allowed to take an ownership expense deduction.[10] The Manual essentially says that the Ownership Cost is intended to cover debt service or lease payments, and that it functions only as a cap, so that no such expense is to be deducted if the debtor has none.

We must begin, of course, with the language of the statute. If it is clear and unambiguous, we have only to apply it.[11]

Nothing in the statutory language refers to the debtor's actual transportation expenses of any kind, except for the "Other Necessary Expenses" category. And nothing in the statutory language makes any reference to the Manual. Nor does the statutory language suggest the amounts specified in the Standards are to be used only as maximums, rather than as the expense amounts to be deducted.

To the contrary, the language of § 707(b)(2)(A)(ii)(I) that the "monthly expenses shall be . . . the amounts specified" in the Standards states precisely the contrary – that the specified amounts are to be used, rather than that they are limits on a number derived from some other source. Not only would it take at least one more key word for this language to refer to a maximum limit rather than a specified amount, but it would require an additional concept or definition – the amount or number to which that limit should be applied. For the statute to

---

[9] Internal Revenue Manual, §5.8.5.5.2 (09-01-2005)(available at www.irs.gov/irm/part5/ch08s05.html#d0e74647)
Internal revenue Service Collection Financial Standards (available at www.irs.gov/individuals/article/0,,id=96543,00.html).

[10] *E.g.,* In re Barraza, 346 B.R. 724, 726 (Bankr. N.D. Tex. 2006); In re Demonica, 345 B.R. 895, 904 (Bankr. N.D. Ill. 2006); In re McGuire, 342 B.R. 608, 612 (Bankr. W.D. Mo. 2006); In re Hardacre, 338 B.R. 718, 726 (Bankr. N.D. Tex. 2006).

[11] Lamie v. United States Trustee, 540 U.S. 526, 533 (2004); United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 240-41 (1989) ("as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute").

4

identify one number subject to the maximum limit of another number, it would at least have to instruct the reader how to identify two numbers – the starting number and the limit. This statute only references one number, that derived from the Local Standards. The phrase "the debtor's applicable monthly expense amounts specified under the . . . Local Standards" references only one number, not two. This structure alone indicates it functions to specify the number to be used, rather than a limit to some other unidentified number.

There being no ambiguity or absurdity in reading the statute to define the number to be used – the number "specified" in the Local Standards – there does not seem to be any reason to pursue the analysis further.[12]

Nonetheless, some courts have ostensibly found an ambiguity in the word "applicable." At least a couple of opinions have concluded that the word would be superfluous if it were not intended somehow to reference the debtor's actual debt service or lease payments capped by the Local Standards amount, because otherwise the statute would read the same without it.[13] The simple answer is that it references both the region of the country in which the debtor lives and the selection that must be made between the two columns that appear in the Local Standards, one for the first car and one for the second car. If the debtor has only one car, the "applicable" expense is the one found in the first column. It takes a tortured reading to make "applicable" refer to anything else.

---

[12] In re Swan, 2007 WL 1146485 *4 (Bankr. N.D. Cal. April 18, 2007); In re Watson, 2007 WL 1086582 *4 (Bankr. D. Md. April 11, 2007); In re Enright, 2007 WL 748432 *6 (Bankr. M.D.N.C. March 6, 2007); In re Sawdy, 2007 WL 582535 (Bankr. E.D. Wis. Feb. 20, 2007); In re Prince, 2006 WL 3501281, *2 (Bankr. M.D.N.C. 2006); In re Fowler, 349 B.R. 414, 418 (Bankr. Del. 2006); In re Farrar-Johnson, 2006 Bankr. LEXIS 2214, 2006 (Bankr. N.D. Ill. Sept 15, 2006); In re Haley, 2006 Bankr. LEXIS 2857, 2006 (Bankr. N.H. October 18, 2006) ("Under § 707(b)(2)(A)(ii)(I), what makes an ownership expense 'applicable' is not whether the debtor is required to make a car payment or whether the deduction would be allowed by the IRS [but] [r]ather whether an expense is 'applicable' depends on the number of vehicles owned or leased by the debtor."). *Accord,* Hon. Eugene R. Wedoff, *Means Testing in the New § 707(b),* 79 AM. BANKR. L.J. 231, 255-57 (2005).

[13] In re Slusher, 359 B.R. 290 (Bankr. D. Nev. 2007); In re Wiggs, 2006 WL 2246432, *6 (Bankr. N.D. Ill. 2006).

Indeed, this analysis suggests some more reasons why the statute dictates the use of the specified amount, rather than using it only as a cap to some other number derived from another source. "Applicable" means "capable of or suitable for being applied."[14] This connotes a number that is "applied" to someone or some thing from some external source, not that is derived from the person or thing itself. For example, the "applicable" ticket price for a movie references the schedule of prices that may depend on the moviegoer's age – it does not refer to the moviegoer's age. In determining how much to charge, the ticket taker would not ask "And what is your applicable age?" Indeed, imagine how a 12-year old would respond to that question – he would say "What??" But he could easily identify the "applicable" ticket price given his actual age of 12. He would simply "apply" the schedule of prices to that age.[15] An internally generated number such as a person's age or expenses is not "applicable" to that person because it is not in any sense "applied." But there may well be an external schedule that defines an applicable number, such as a price or a tax rate, that depends on the category in which the person's internally generated numbers fall. The "applicable" number is then the one specified in the schedule, not the person's own individual number.

Moreover, "applicable" is an adjective that modifies the "amounts specified" in the Standards. It does not modify "debtor's monthly expenses," which appears at the beginning of § 707(b)(2)(A)(ii)(I). The adjective functions to narrow the reference to "amounts specified"; it does not refer to, modify nor restrict the debtor's actual monthly expenses. Thus the "amounts specified" by the Local Standards are narrowed according to where the debtor lives and how many cars she owns.

The fact that the phrase "actual" monthly expenses is used in the same clause as "applicable" also suggests that Congress did not mean "applicable" to be "actual." Statutes

---

[14] *Enright*, 2007 WL 748432 *6; WEBSTER'S NEW COLLEGIATE DICTIONARY (rev. ed. 1980).

[15] This illustration suggests perhaps the better test for "plain meaning" is "How would a 12-year old understand it?", rather than "How would Justice Scalia understand it?" *Cf.* In re Kane, 336 B.R. 477, 487 (Bankr. D. Nev. 2006).

must be read in their entirety and not interpreted based on isolated phrases.[16] The court must consider the next phrase where the term "actual" refers to Other Necessary Expenses." 11 U.S.C. § 707(b)(2)(A)(ii)(I). Since Congress used "actual" to modify a different expense in the same provision, it would make little sense to interpret "actual" and "applicable" as meaning the same thing. The court is not convinced the word would have been selected to denote "actual subject to a maximum cap," as at least one opinion has suggested.[17] Instead, the more logical conclusion is that Congress used two different terms to achieve two different results.

Although a number of opinion have relied on Internal Revenue Service publications for an interpretation of the relevant provision,[18] this Court concludes there is no basis to do so. Nothing in the statute, Bankruptcy Rules or official forms refers a debtor to any IRS publications for additional rules or interpretation.[19] The IRS is not an administrative agency that administers the Bankruptcy Code, so there is no basis for a Court to defer to its administrative expertise.[20] In § 707(b) Congress adopted the Standards, not other IRS publications interpreting or applying them. Nor did it instruct courts to allow expense deductions in the amount an IRS field agent would allow in deciding whether to settle a tax debt for less than the amount owed, sort of an *Erie*-type guess as to what another entity would conclude.[21] Congress' use of the word

---

[16] United States v. Morton, 467 U.S. 822, 828, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984).

[17] In re Slusher, 359 B.R. 290 (Bankr. D. Nev. 2007).

[18] *E.g.*, In re Hardacre, 338 B.R. 718, 726 (Bankr. N.D. Tex. 2006); In re McGuire, 342 B.R. 608, 612 (Bankr. W.D. Mo. 2006). *See also* In re Demonica, 345 B.R. 895, 904 (Bankr. N.D. Ill. 2006); In re Barraza, 346 B.R. 724, 726 (Bankr. N.D. Tex. 2006).

[19] In re Prince, 2006 WL 3501281 *2 ("The relevant language . . . does not refer to or purport to include the numerous rules and practices specified throughout the Internal Revenue Manual").

[20] *Cf.* Thomas Jefferson University v. Shalala, 512 U.S. 504, 513 (1994).

[21] The Court in *In re Fowler* examined the legislative history of the statute and concluded that although a draft of the statute had initially included language instructing that the expenses were to be applicable to the debtor "as determined under the Internal Revenue Service financial analysis for expenses," the subsequent removal of the language in the present version of the statute signaled that Congress did not intend for courts to use the IRS guidelines to determine whether the expense deductions could be taken when calculating the disposable income for bankruptcy debtors. *Id.* at 419,

7

Case 2:06-bk-01774-RJH   Doc 19   Filed 04/26/07   Entered 04/27/07 08:36:55   Desc
Main Document    Page 7 of 9

must be read in their entirety and not interpreted based on isolated phrases.[16] The court must consider the next phrase where the term "actual" refers to Other Necessary Expenses." 11 U.S.C. § 707(b)(2)(A)(ii)(I). Since Congress used "actual" to modify a different expense in the same provision, it would make little sense to interpret "actual" and "applicable" as meaning the same thing. The court is not convinced the word would have been selected to denote "actual subject to a maximum cap," as at least one opinion has suggested.[17] Instead, the more logical conclusion is that Congress used two different terms to achieve two different results.

Although a number of opinion have relied on Internal Revenue Service publications for an interpretation of the relevant provision,[18] this Court concludes there is no basis to do so. Nothing in the statute, Bankruptcy Rules or official forms refers a debtor to any IRS publications for additional rules or interpretation.[19] The IRS is not an administrative agency that administers the Bankruptcy Code, so there is no basis for a Court to defer to its administrative expertise.[20] In § 707(b) Congress adopted the Standards, not other IRS publications interpreting or applying them. Nor did it instruct courts to allow expense deductions in the amount an IRS field agent would allow in deciding whether to settle a tax debt for less than the amount owed, sort of an *Erie*-type guess as to what another entity would conclude.[21] Congress' use of the word

---

[16] United States v. Morton, 467 U.S. 822, 828, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984).

[17] In re Slusher, 359 B.R. 290 (Bankr. D. Nev. 2007).

[18] *E.g.*, In re Hardacre, 338 B.R. 718, 726 (Bankr. N.D. Tex. 2006); In re McGuire, 342 B.R. 608, 612 (Bankr. W.D. Mo. 2006). *See also* In re Demonica, 345 B.R. 895, 904 (Bankr. N.D. Ill. 2006); In re Barraza, 346 B.R. 724, 726 (Bankr. N.D. Tex. 2006).

[19] In re Prince, 2006 WL 3501281 *2 ("The relevant language . . . does not refer to or purport to include the numerous rules and practices specified throughout the Internal Revenue Manual").

[20] *Cf.* Thomas Jefferson University v. Shalala, 512 U.S. 504, 513 (1994).

[21] The Court in *In re Fowler* examined the legislative history of the statute and concluded that although a draft of the statute had initially included language instructing that the expenses were to be applicable to the debtor "as determined under the Internal Revenue Service financial analysis for expenses," the subsequent removal of the language in the present version of the statute signaled that Congress did not intend for courts to use the IRS guidelines to determine whether the expense deductions could be taken when calculating the disposable income for bankruptcy debtors. *Id.* at 419,

"specified" could not be much clearer in indicating the Standards govern, not what the IRS would allow.

Indeed, the language of the IRS Manual provides two additional reasons why § 707(b) should not be interpreted as the Trustee urges. First, the fact that the IRS had to make that explanation in the Manual indicates its recognition that the Standards themselves do not indicate they impose maximums, and are not to be used if the debtor has no debt service on the vehicle. Second, the language of the Manual provided a model that Congress could easily have adopted if that were its intent. Congress' choice not to use the language of the Manual implies that it did not intend the same result.[22]

The Court therefore concludes that the language of § 707(b) requires the amounts specified in the Standards to be used, for the applicable region and the number of cars owned. And since the Court finds no ambiguity in this language, there is no need to resort to legislative history.

A number of opinions have identified illogical or unfair results that might occur under the various proposed interpretations of the language.[23] None of these, however, reaches the level of the absurd – something no rational person could have intended, or a result demonstrably at odds with the fundamental purpose of the legislation.[24] Each of the proposed interpretations has

---

(quoting Congressional record, H.R. 3150, 105th Congress (1998)).

[22] "The fact that Congress did not use language similar to the IRM evidences that it did not intend the Local Standards to apply as a cap." In re Fowler, 349 B.R. 414, 418 (Bankr. D. Del. 2006), quoted in In re Sawdy, 2007 WL 582535 * 13 (Bankr. E.D. Wis. 2007). *See also* In re Grunert, 353 B.R. 591, 594 (Bankr. E.D. Wis. 2006)(quoting the House Judiciary Committee Report that "The formula remains inflexible and divorced from the debtor's actual circumstances.").

[23] For example, as the *Fowler* Court stated, ridiculous and unfair results would arise if debtors with no debt service were denied the expense deduction but those with only one payment remaining were allowed the full Local Standards ownership expenses. In re Fowler, 349 B.R. at 418. But the *Carlin* court concluded there is nothing absurd in this result. In re Carlin, 348 B.R. 795, 798 (Bankr. D. Or. 2006).

[24] In re Sawdy, 2007 WL 582535 *7 (Bankr. E.D. Wis. 2007)(after reviewing various cases finding unfair results under the various interpretations, the court concludes it "can provide support for either interpretation").

8

a rational basis and is consistent with the apparent fundamental purposes of BAPCPA, to limit the allowable expenses, to achieve greater uniformity in the application of § 707(b), and to limit judicial and trustee discretion.  Consequently the choice between possible interpretations should be guided primarily by the language Congress chose rather than by which interpretation this Court believes would achieve reasonable and fair results the greater percentage of the time.

**Conclusion**

For the foregoing reasons, the Court concludes debtors may use the Ownership Costs specified by the Local Standards regardless of whether the vehicle secures a debt.  The Trustee's objection to the Debtor's plan on that basis is overruled.

DATED AND SIGNED ABOVE



Copies of the foregoing e-mailed this
26th day of April, 2007, to:

Andrew S. Nemeth, Esq.
Phillips & Associates
Attorneys for Debtor
nemeth_bankruptcy@yahoo.com

Ronald L. Hoffbauer, Esq.
Attorney for Chapter 13 Trustee
ronh@maney13trustee.com

/s/ Pat Denk
Judicial Assistant